**UNITED STATES of America,**

v.

**Danilo PEREZ–VALDERA, Defendant.**

**No. S 93 Cr. 956 (PKL).**

United States District Court,
S.D. New York.

Oct. 10, 1995.

**182**

Julie Prag Vianale, The Legal Aid Society, Federal Defender Division, New York City, for defendant.

Joanna C. Hendon, Assistant United States Attorney, New York City, for the U.S.

### MEMORANDUM ORDER

LEISURE, District Judge:

Defendant Danilo Perez–Valdera ("defendant") moves to dismiss the first count of a three-count Superseding Indictment, which charges him with unlawfully reentering the United States, after lawful deportation, in violation of 8 U.S.C. § 1326. In addition, defendant moves to sever for trial this first count of the Superseding Indictment from counts two and three. For the reasons stated below, the Court denies defendant's motion to dismiss count one of the Superseding Indictment, and grants his motion to sever for trial count one of the Superseding Indictment from counts two and three.

### BACKGROUND

Defendant, a citizen of the Dominican Republic, originally entered the United States in May of 1972, and thereafter obtained permanent resident status. *See* Affirmation of Assistant United States Attorney Joanna C. Hendon ("Hendon Aff.") Ex. A. The address listed for defendant on his original Immigrant Visa and Alien Registration form was 564 West 160th Street, Apartment # 42, New York, New York 10032. From January of 1980 through May of 1983, defendant was convicted of three unrelated crimes. *See* Hendon Aff. Exs. B–F. In early July of 1986, defendant was released from prison on parole from his third conviction. After violating his parole, he was taken into federal custody on July 13, 1988 in New York City, *see* Hendon Aff. Ex. I, and subsequently incarcerated in the Federal Correctional Institute in Oakdale, Louisiana ("Oakdale").

While defendant was at Oakdale, a deportation investigation, originally initiated in 1983 during defendant's incarceration for his third conviction, *see* Hendon Aff. Ex. G., was renewed. The basis of the Immigration and Naturalization Services ("INS") proceeding was that defendant, a citizen of the Dominican Republic, had, after entry into the United States, been convicted of two or more crimes of moral turpitude not arising out of a single scheme of criminal conduct, and was therefore subject to deportation pursuant to § 241(a)(4) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1251(a)(4). *See* Government's Memorandum of Law in Opposition to Defendant's Pretrial Motions at 4, Exs. G & H.

On October 12, 1989, a bail bond was posted on defendant's behalf, and he was released from custody. *See* Hendon Aff. Ex. O. Defendant immediately moved back to New York. Pursuant to a motion filed by his Louisiana-based counsel, Leo Jerome Lahey, Esq. ("Lahey"), the venue of the deportation proceedings was transferred from Louisiana to New York City on October 13, 1989. *See* Hendon Aff. Ex. P. Lahey's motion to withdraw as counsel, which was granted on November 15, 1989, stated that defendant could be served with any notices for hearings or

other matters at 564 West 160th Street, Apt. # 42, New York, New York 10032, which is "the home of [defendant's] mother, and is where [defendant] is residing." Hendon Aff. Ex. Q. Defendant does not dispute that he resided at this address upon his return to New York. On October 23, 1989, the Executive Office for Immigration Review ("EOIR") mailed to defendant, at the above address, notice that a hearing before an immigration judge was scheduled for November 14, 1989. *See* Affirmation of Thomas J. Bonita III ("Bonita Aff.") Ex. A. The letter was sent first-class mail. The notice stated that failure to appear may result in the hearing being held, and a decision to deport made, in defendant's absence. *See id.* After defendant failed to appear, the hearing was adjourned until January 9, 1990. Notice of this hearing was mailed first-class mail to defendant on November 15, 1990. *See id.* Ex. C. Again defendant failed to appear at the scheduled hearing, and again the hearing was adjourned, this time until May 22, 1990. Notice of this hearing was mailed first-class mail to defendant on March 6, 1990. *See id.* Ex. D. For a third time, he failed to show up.

At the May 22, 1990 hearing, the immigration judge decided to proceed without defendant. After finding that defendant had "received those notices but for some … unknown reason failed to appear," Hendon Aff. Ex. T at 1, the immigration judge, pursuant to § 241(a)(4) of the INA, ordered him deported. *See id.* Exs. T & U.

The next day the EOIR, again by first-class mail, sent defendant various documents relating to the hearing, including notice of his right to appeal the decision. *See* Bonita Aff. Ex. E. The EOIR notice informed defendant that his time to appeal the deportation order would expire on June 6, 1990. The EOIR did not receive an appeal. *See* Hendon Aff. Ex. V. On September 29, 1991, defendant was deported to the Dominican Republic. *See id.* Ex. W.

Defendant denies having ever received notice of the May 22, 1990 deportation hearing. *See* Affirmation of Danilo Perez–Valdera ¶ 2. In addition, he denies having ever received notice informing him that a decision had been rendered and that he had a right to appeal. *Id.* ¶ 3. According to EOIR policy, any evidence of the return of a mailed notice would have been placed in defendant's file. *See* Bonita Aff. ¶ 6. His file did not contain such evidence. *Id.*

Defendant was arrested in New York City on April 25, 1995. *See* Hendon Aff. Ex. W. Subsequent to his arrest, a federal grand jury in the Southern District of New York returned a Superseding Indictment against defendant charging him with illegally reentering the United States following conviction for an aggravated felony. *See* 8 U.S.C. § 1326. The Superseding Indictment also contains two other counts, which charge defendant with (1) unlawful possession of a stolen check, and (2) unlawful possession of a United States Postal Money Order. *See* Affirmation of Julie Prag Vianale, Esq. ("Prag Vianale Aff.") ¶ 2.

### DISCUSSION

I. *Defendant's Right to Challenge Collaterally the Deportation Proceedings*

■ Section 276 of the INA provides that an alien who has been lawfully deported from the United States, and thereafter reenters the United States without the consent of the Government, is guilty of a felony. *See* 8 U.S.C. § 1326. Aliens charged with violation of § 1326 have a due process right to challenge collaterally the validity of their underlying deportation hearings. In *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), the Supreme Court stated:

> Depriving an alien of the right to have the disposition in a deportation hearing reviewed in a judicial forum requires, at a minimum, that review be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense.

*Id.* at 839, 107 S.Ct. at 2155. *See also United States v. Fares*, 978 F.2d 52, 56 (2d Cir. 1992). The Court in *Mendoza–Lopez* declined to enumerate which procedural errors "are so fundamental that they may functionally deprive the alien of judicial review."

**184**

*Mendoza–Lopez,* 481 U.S. at 839 n. 17, 107 S.Ct. at 2155 n. 17.

■ Defendant, while conceding his eligibility for deportation, claims that if he had received adequate notice of his deportation hearing he could have, pursuant to § 212(c) of the INA, 8 U.S.C. § 1182(c), presented evidence which would have allowed the immigration judge to grant him a waiver of deportation. Therefore, he seeks to dismiss the current illegal reentry charge by asserting that the failure of the EOIR to provide notice meeting the requirements of due process invalidated his underlying deportation.

## II. *Statutory Notice Requirements for INA Deportation Hearings*

The INA requires that an alien "be given notice [of his deportation hearing], reasonable under all the circumstances, of the nature of the charges against him and of the time and place at which the proceedings will be held." 8 U.S.C. § 1252(b)(1). The statute also provides that "[i]f any alien has been given a reasonable opportunity to be present at a proceeding under this section, and without reasonable cause fails or refuses to attend ... such proceeding, the [immigration judge] *may* proceed to a determination in like manner as if the alien were present." 8 U.S.C. § 1252(b) (emphasis supplied).

■ Section 545(a) of the Immigration Act of 1990 (the "1990 Act"), 8 U.S.C. § 1252b, did not replace 8 U.S.C. § 1252(b)(1), but it did specify the notice requirements for deportation hearings. This section, which came into effect after defendant's deportation hearing, states that notice must be given either in person or, if not practicable, by certified mail. See 8 U.S.C. § 1252b(a)(2). If the requirements of § 545(a) are met, and if the Government can prove deportability by clear, unequivocal, and convincing evidence, then an alien who fails to appear at a scheduled deportation hearing *must* be deported by the immigration judge. *See* 8 U.S.C. § 1252b(c).

## III. *Notice and Due Process*

■ Because defendant's hearing was held before the 1990 Act came into effect, 8

U.S.C. § 1252(b), not 8 U.S.C. § 1252b, governs the instant situation. The notice language used in 8 U.S.C. § 1252(b) is very similar to the language used by the Supreme Court in its now classic due process test for reasonable notice. In *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), the Court said that "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *id.,* meets the requirements of due process. *See also Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 484, 108 S.Ct. 1340, 1344, 99 L.Ed.2d 565 (1988). The *Mullane* test does not ask whether notice was actually received, but rather whether the means selected were "such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane,* 339 U.S. at 315, 70 S.Ct. at 657. The Supreme Court has held, in a wide variety of situations, that "notice by first-class mail is sufficient, notwithstanding the Court's obvious awareness that not every first-class letter is received by the addressee." *Weigner v. New York,* 852 F.2d 646, 651 (2d Cir.1988), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989). *See, e.g., Pope,* 485 U.S. at 491, 108 S.Ct. at 1348 (notice to creditors in probate proceedings); *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 799–800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983) (notice to mortgagee of tax foreclosure); *Greene v. Lindsey,* 456 U.S. 444, 455, 102 S.Ct. 1874, 1880–81, 72 L.Ed.2d 249 (1982) (notice to public housing tenants of forcible entry and detainer actions); *Grievance Comm. for S.D.N.Y. v. Polur,* 67 F.3d 3, 6 (2d Cir.1995) (first-class mailing of court documents to address furnished to the court clerk by an attorney is reasonably calculated to apprise the attorney of the document). Due process does not require that the notice sent by first-class mail be proven to have been received. *See Weigner,* 852 F.2d at 651.

■ Evidence that notice was sent by first-class mail does not, by itself, ensure that the Government has discharged its due process burden. Rather, the Government is re-

quired to show that service by mail was reasonable under the circumstances of the particular situation in question. *See Mullane,* 339 U.S. at 314, 70 S.Ct. at 657; *Montgomery v. Scott,* 802 F.Supp. 930, 932 (W.D.N.Y.1992).

Considering the facts of this case, the Court concludes that providing notice to defendant by first-class mail met the requirements of due process. First, defendant concedes that the address to where the Government repeatedly sent notice is where he was residing. Because there is no evidence that any of the mailed notice was returned to the EOIR, it was reasonable for the Government to assume that the mail was reaching its intended destination. In his affirmation, defendant only asserts that he did not receive the notice as to his May 22, 1990 hearing, and the notice as to his right to appeal. While it is true that these notices were the only two which were causally related to his deportation, his failure to deny receipt of the prior two notices provides further evidence that the mailed notices were reaching defendant's residence. It is quite possible that, in other situations, first-class mail would be an unreasonable method of notice of a deportation hearing. However, the facts of this case simply do not support such a finding.

In light of Congress' decision to amend the INA by supplementing, but not replacing, the notice requirements of § 1252(b) with § 1252b, defendant makes the following argument: if § 1252(b) is the functional equivalent of the *Mullane* test, and if new § 1252b requires notice by certified mail at a minimum, then, by amending the INA with § 1252b, Congress must be conceding that the due process standard of reasonable notice, incorporated in § 1252(b), required notice beyond first-class mail all along.[1]

■ The strength of this argument, however, is illusory. When evaluating the reasonability of notice, the consequences of a failure to appear must be considered. *Cf. Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) (due process analysis involves the balancing of the private interest affected by the official action, the risk of an erroneous deprivation of such interest through the procedures used, and the interest of the Government). Before the 1990 Act, if an alien failed to appear at his deportation hearing, the immigration judge had discretion to either deport the alien or reschedule the hearing for a later date. This case provides an example of an immigration judge exercising that discretion, as defendant's deportation hearing was rescheduled several times before the immigration judge ordered him deported. Only after the immigration judge found that defendant had failed to appear without explanation on any of the hearing dates, and that none of the notices had been returned to their sender, *see* Hendon Aff.Exs. T & U, did he conclude that defendant had received notice, and only then did he order deportation.

Assuming the amended notice requirements are met, the 1990 Act mandates that an immigration judge enter a deportation order at the first hearing in which the alien is absent.[2] Because the consequences to an alien of a failure to appear are more severe under the 1990 Act, it is not surprising that the notice requirements were strengthened. If first-class mail were all that was required by the INA under this mandatory *in absentia* deportation scheme, a due process argument based upon inadequate notice would be much more compelling. Because in this case the immigration judge checked to insure the notices were not being returned, because it is

1. In fact, Congress did not believe that the pre-1990 Act notice requirements of the INA violated due process. *See* H.R.Rep. No. 681, 101st Cong., 2d Sess. 338 (1990).

2. The legislative history underlying the section of the 1990 Act dealing with the consequences for an alien of nonappearance at a deportation proceeding is sparse. However, it does indicate that Congress' primary motivation in instituting both heightened notice requirements and mandatory deportation for failure to appear was the high

number of aliens who failed to appear at their hearings. *See* H.R.Rep. No. 955, 101st Cong., 2d Sess. 132 (1990). In addition to those aliens who failed to appear due to lack of notice, Congress was concerned about aliens who had notice, but still failed to appear. *See* H.R.Rep. No. 681, 101st Cong., 2d Sess. 150 (1990). While the legislative history is not instructive on this point, presumably one reason why aliens who had notice did not appear is that *in absentia* deportation was not a likely consequence of such conduct.

conceded that the notices were being sent to the proper address, *see supra* p. 183, and because the hearing was rescheduled several times for defendant's benefit, the Court does not find a due process violation based upon insufficient notice.[3]

### IV. *Defendant's Motion to Sever*

■ Defendant asserts that, according to Rule 8(a) of the Federal Rules of Criminal Procedure, counts two and three were improperly joined in the Superseding Indictment. *See* Prag Vianale Aff. ¶¶ 12, 13. Therefore, he moves the Court to sever these two counts from the illegal reentry count for trial. *See id.* The Government does not oppose this motion. *See* Government's Memorandum of Law in Opposition to Defendant's Pretrial Motions, 1 n. 1. Because the Government does not object, the Court grants defendant's motion to sever for trial the illegal reentry count from the remaining two counts of the indictment.

### CONCLUSION

For the reasons stated above, defendant's motion to dismiss the first count of his indictment is DENIED, and his motion to sever the second and third counts from the first is GRANTED.

**SO ORDERED.**

---

**3.** Because the notice afforded in this situation satisfied the requirements of due process, the Court need not consider defendant's argument that unconstitutional notice unfairly prejudiced him.