Nery Esperanza FUENTES–ARGUETA, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Edward McElroy, District Director of INS, Janet Reno, United States Attorney General, Respondents.

No. 356, Docket 96–4001.

United States Court of Appeals, Second Circuit.

Argued Oct. 4, 1996.

Decided Dec. 4, 1996.

Bruno Joseph Bembi, Hempstead, NY, for Petitioner.

Pierre M. Gentin, Assistant United States Attorney for the Southern District of New York, New York City (Mary Jo White, United States Attorney, Steven M. Haber, Assistant United States Attorney for the Southern District of New York, New York City), for Respondents.

Before: KEARSE, LEVAL, and CABRANES, Circuit Judges.

PER CURIAM:

The petitioner, a citizen of El Salvador, was arrested for allegedly entering the United States without inspection by U.S. immigration officials. The Immigration Judge ("IJ") assigned to her case sent her notice of a February 9, 1993, deportation hearing by certified mail to her address in Jamaica, New York. Although postal records indicate that delivery of the notice was attempted on two separate occasions and notification was left that the post office was holding a delivery for the petitioner, no one signed for the delivery or claimed the mailing at the post office. Accordingly, the notification was ultimately returned to the IJ as "unclaimed." As the petitioner failed to attend the February 9 hearing, the IJ entered an order of deportation *in absentia*. The petitioner argues that, under these circumstances, she was not afforded the notice required under § 242B of the Immigration and Nationality Act, 8 U.S.C. § 1 *et seq.* (the "Act"), and the Due Process Clause of the Fifth Amendment, and that it was therefore improper for the IJ to enter an *in absentia* order of deportation. In addition, based on the IJ's initial failure to recognize attorney Bruno Joseph Bembi as her counsel of record, the petitioner argues that the IJ interfered with her constitutional and statutory right to counsel in deportation proceedings.

We find these claims to be without merit. The Board of Immigration Appeals ("BIA") has previously found that, where an alien is sent notice of an upcoming deportation hearing by certified mail, the fact that the notice is returned "unclaimed" does not render that notice inadequate under the § 242B provision governing *in absentia* deportation orders. Rather, the BIA has applied a presumption that, so long as the IJ sent proper notification to the alien's last known address by certified mail, notice was adequate, unless the alien can present evidence that the post office did not in fact attempt to deliver the notice or that any attempted delivery was somehow performed improperly. We find this to be a reasonable interpretation of the Act and one that comports with the requirements of Due Process. In this case, the BIA did not abuse its discretion in upholding the IJ's refusal to reopen petitioner's deportation proceedings based on its conclusion that the petitioner had failed to rebut the presumption of adequate delivery of notice. Nor do we find any merit in the petitioner's claim that she was denied assistance of counsel in her deportation proceedings.

## I. BACKGROUND

The petitioner, Nery Esperanza Fuentes–Argueta ("Fuentes" or "petitioner"), was arrested at or near Laredo, Texas, on August 24, 1992. A citizen of El Salvador, she is alleged to have crossed the border from Mexico into Texas on August 23, 1992, without inspection by U.S. immigration officials in violation of 8 U.S.C. § 1251(a)(1)(B). Al-

though she was released from custody, Fuentes was served with an order to show cause why she should not be deported. The order informed her that she would subsequently receive notice of the time, date, and location of her deportation hearing.

District Counsel for the Immigration and Naturalization Service ("INS") in San Antonio, Texas, received a letter dated September 29, 1992, from attorney Bruno Joseph Bembi informing the INS that Fuentes had moved to Jamaica, New York, providing the INS with her new address, and requesting that her case file be transferred to an INS office in New York City. The IJ assigned to the petitioner's case responded to Bembi in mid-October, advising him that his September 29 letter could not serve as a formal motion for a change of venue because Bembi had not yet submitted a notice of appearance as counsel for Fuentes and because his letter did not allege facts normally set forth in a motion for change of venue. The IJ's letter also informed Bembi that Fuentes had been sent a notice on October 14 informing her that her deportation hearing was set to take place in San Antonio, Texas on November 17, 1992.

The IJ sent the October 14, 1992, notice to Fuentes via certified mail at her address in Jamaica, New York. The notification was signed for at that address, and Fuentes concedes that she received it. Nevertheless, she failed to appear at her November 17 deportation hearing. Pursuant to a request from counsel for the INS, the IJ rescheduled the petitioner's hearing for February 9, 1993. On November 18, 1992, the IJ sent another Notice of Hearing in Deportation Proceedings to Fuentes, again by certified mail, informing her of the location, date, and time of the rescheduled hearing. According to postal records, two attempts were made to deliver the notification at the petitioner's Jamaica, New York, address, and notices were left indicating that the post office was holding mail for her. Because no one signed for the notification on either occasion and the petitioner did not claim the delivery at the post office, the notification was ultimately returned to the IJ "unclaimed."

The petitioner failed to appear at her rescheduled, February 9, 1993, deportation hearing. Accordingly, the IJ issued an order of deportation *in absentia*, a copy of which was sent to the petitioner. In late August, 1993, Bembi filed, for the first time, a notice of appearance as counsel for the petitioner, and he moved to reopen her deportation proceedings. In an order dated October 8, 1993, the IJ denied the motion to reopen, and the petitioner did not exercise her right to appeal to the BIA.

Instead, on September 9, 1994, Fuentes again moved to reopen her deportation proceedings. In the memorandum supporting her motion, the petitioner argued, *inter alia*, that new evidence—namely, the postal service's return receipts indicating that the notice of the February 9 deportation hearing had been returned to the IJ "unclaimed"—supported her position that she had never received the notice. To further bolster her claim, the petitioner included an affidavit in which she states: "I was not aware that I had a hearing." The IJ again denied the petitioner's motion to reopen, concluding that the mailing of the notice to Fuentes's last known address was sufficient to satisfy any notice requirements under the Act. The petitioner filed a timely appeal with the BIA.

The BIA affirmed the IJ's decision denying the petitioner's motion to reopen her deportation proceedings. In its decision, the BIA relied on *In re Grijalva*, Interim Decision 3246, 1995 WL 314388 (B.I.A. Apr. 28, 1995), to reject the petitioner's claim that the IJ's efforts to notify her of the February 9, 1993, deportation hearing failed to meet either statutory or due process requirements for adequate notice. *Grijalva* established a strong presumption that the postal service has in fact attempted to deliver certified mail—even in cases where the item is returned "unclaimed"—and holds that this attempted delivery by certified mail is itself sufficient to meet the notice requirements of the Act. Finding that the petitioner in the instant case had failed to supply evidence sufficient to overcome the presumption that the post office took proper steps to deliver the notification, the Board rejected her claim of inadequate notice and upheld the IJ's decision denying her motion to reopen deportation proceedings.

Fuentes petitions this court for review of the BIA decision affirming the IJ's denial of her motion to reopen deportation proceedings. We address her claims in turn.

## II. DISCUSSION

We have jurisdiction to review decisions of the Board of Immigration Appeals pursuant to 8 U.S.C. § 1105a(a), and we review a BIA decision to deny an alien's motion to reopen deportation proceedings "only to determine whether the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," *Vargas v. INS,* 938 F.2d 358, 360 (2d Cir.1991). Moreover, we afford "substantial deference" to an agency's reading of statutes that Congress has entrusted it to interpret. *See Osorio v. INS,* 18 F.3d 1017, 1022 (2d Cir.1994). Accordingly, we will defer to the BIA's reading of the Act unless "it appears from the statute or its legislative history that the interpretation is contrary to Congress's intent." *Id.* (internal quotation marks and citation omitted).

### A. *Insufficient Notice Under the Act*

Prior to 1990, § 242(b) of the Act, 8 U.S.C. § 1252(b), was the only statutory provision authorizing immigration judges to issue deportation orders *in absentia. See Romero–Morales v. INS,* 25 F.3d 125, 128 (2d Cir. 1994). Section 242(b) provides that

[i]f any alien has been given a *reasonable opportunity* to be present at a proceeding under this section, and *without reasonable cause* fails or refuses to attend or remain in attendance at such proceeding, the special inquiry officer may proceed to a determination in like manner as if the alien were present.

8 U.S.C. § 1252(b) (emphasis supplied). As for notice, § 242(b)(1) instructs the Attorney General to prescribe regulations providing the alien with "notice, reasonable under all the circumstances, of the nature of the charges against him and of the time and place at which the proceedings will be held." 8 U.S.C. § 1252(b)(1).

In 1990, however, without repealing § 242(b), Congress amended the Act to add § 242B, a more stringent provision *requiring* (rather than merely permitting) the IJ to issue *in absentia* orders of deportation where

the INS establishes deportability by "clear, unequivocal, and convincing evidence." 8 U.S.C. § 1252b(c)(1); *see Romero–Morales,* 25 F.3d at 128. Among the differences between § 242(b) and § 242B, the latter sets forth a stricter notice requirement. *See United States v. Perez–Valdera,* 899 F.Supp. 181, 185 (S.D.N.Y.1995) (observing that, because consequences of alien's failure to appear are more severe under § 242B, notice requirements under that section were "strengthened"). Subsection (a)(2) of § 242B requires that aliens be notified of the time and place of their deportation hearings either in person or by certified mail. *See* 8 U.S.C. § 1252b(a)(2)(A). Subsection (c)(1) of § 242B then provides that, in the event the alien fails to appear, the INS must prove that the alien was provided with notice of the sort described in subsection (a)(2) before the IJ can issue an order of deportation in the alien's absence:

"Any alien who, *after written notice required under subsection (a)(2) of this section* has been provided to the alien or the alien's counsel of record, does not attend a proceeding under section 1252 of this title, shall be ordered deported under ... this title in absentia *if the Service establishes by clear, unequivocal, and convincing evidence* that the written notice was so provided and that the alien is deportable. *The written notice ... shall be considered sufficient for purposes of this paragraph if provided at the most recent address provided* [by the alien]."

8 U.S.C. § 1252b(c)(1) (emphasis supplied). Moreover, subsection (c)(3)(B) of § 242B provides for the reopening of deportation proceedings in cases where "the alien did not receive notice in accordance with subsection (a)(2) of this section." 8 U.S.C. § 1252b(c)(3)(B).

 The petitioner urges that we apply § 242B's notice requirements in evaluating the IJ's efforts to inform her of her February 9 deportation hearing. Specifically, Fuentes contends that, because the language in § 242B(a)(2), which sets forth the notice requirement for deportation hearings, is identical to that of subsection (a)(1), which sets out the notice requirements for orders to show

cause,[1] and because the BIA has held that orders to show cause under § 242B are considered to be served only upon proof of actual receipt by the alien,[2] notices of deportation proceedings should similarly require affirmative proof of receipt.

We conclude that, even under the stricter notice requirements of § 242B, the IJ provided Fuentes with adequate notice of her second deportation hearing.[3] The BIA has interpreted § 242B such that subsections (a)(2) and (c)(1) are satisfied so long as the IJ conveys notice of a deportation hearing in person or by certified mail to the alien's last known address, regardless of whether the notice is actually received by the alien. *See Grijalva*, 1995 WL 314388. "There is no requirement that the certified mail return receipt be signed by the alien or a responsible person at his address to effect service." *Id.* So long as there is proof of attempted delivery, there is a presumption of adequate notice, rebuttable only upon

> present[ation of] substantial and probative evidence such as documentary evidence from the Postal Service, third party affidavits, or other similar evidence demonstrating that there was improper delivery or that nondelivery was not due to the re-

spondent's failure to provide an address where he could receive mail.

*Id.*

In setting forth this presumption of adequate notice where certified mail delivery is *attempted*, the BIA in *Grijalva* necessarily drew a distinction between the requirements for service of notices of deportation proceedings and the requirements for service of orders to show cause. The Board reasoned that, while § 242B employs the same language to describe the general notice requirements for each, orders to show cause and notices of deportation proceedings are not treated identically elsewhere in § 242B. In particular, § 242B(c)(1)—applicable to notices of deportation proceedings but not to orders to show cause—provides that "[t]he written notice by the Attorney General shall be considered sufficient for purposes of this paragraph if provided at the most recent address provided" by the alien. 8 U.S.C. § 1252b(c)(1). The BIA interpreted this sentence to mean that there is no requirement that anyone actually sign for a notification sent by certified mail—only that it be sent to the alien's last known address. *Grijalva*, 1995 WL 314388. The BIA noted that "[t]o hold otherwise would render this ... sen-

---

1. An "order to show cause" notifies an alien that deportation proceedings are being brought against him. The order must describe, *inter alia*, "[t]he nature of the proceedings against the alien," "[t]he acts or conduct alleged to be in violation of law," and "[t]he charges against the alien and the statutory provisions alleged to have been violated." 8 U.S.C. § 1252b(a)(1); *see also* 8 C.F.R. § 242.1(b) (1996). The record indicates, and the parties do not dispute, that Fuentes was personally served with an order to show cause immediately following her arrest in Texas.

2. The BIA established, in a case arising under § 242(b), that where certified mail is employed to send an alien a notice to show cause, "the certified mail receipt [must] be signed by the respondent or a responsible person at the respondent's address and returned to effect ... service." *In re Huete*, Interim Decision 3144, 1991 WL 353512 (B.I.A. Feb. 19, 1991). More recently, the Board has extended this rule to apply to orders to show cause issued pursuant to § 242B. *See Grijalva*, 1995 WL 314388.

3. While urging that we look to § 242B for the appropriate notice standard, the petitioner simultaneously argues that § 242(b) provides the stan-

dard under which the BIA should have reviewed the IJ decision denying her motion to reopen proceedings. In particular, Fuentes invokes § 242(b)'s requirement that an IJ should not order deportation *in absentia* unless the alien fails to attend a deportation proceeding "without *reasonable cause*," 8 U.S.C. § 1252(b) (emphasis supplied), as the appropriate standard for reviewing the IJ's decision. Her lack of notice, she claims, constitutes "reasonable cause" for her failure to attend. Section 242(b), however, has been interpreted to permit even the use of first class mail in sending notices of deportation hearings. *See, e.g., United States v. Estrada–Trochez*, 66 F.3d 733, 736 & n. 1 (5th Cir.1995) (upholding use of first class mail to send notice of deportation hearing and explaining that § 242(b) "does not impose a more stringent notice requirement on the INS than required by the Constitution"). Accordingly, because we find that the petitioner received notice of her deportation hearing commensurate with § 242B's stricter notice requirements, we find no merit to the argument that Fuentes's failure to know of the hearing constituted "reasonable cause" under § 242(b).

tence of subsection (c)(1) meaningless as superfluous language...." *Id.*

We find no basis on which to conclude that this reading of § 242B(c)(1) is in any way at odds with congressional intent. *See Osorio,* 18 F.3d at 1022. Indeed, at least one circuit has already relied on this aspect of the *Grijalva* decision, although it did so in a slightly different context. *See United States v. Minnesota Trust Co.,* 59 F.3d 87, 90 n. 3 (8th Cir.1995) (citing *Grijalva* for proposition that, where notice to produce alien was sent to issuer of immigration delivery bond by certified mail, "[t]he fact that the notices were returned unclaimed is not controlling" with respect to adequacy of notice). Accordingly, we defer to the BIA's decision in *Grijalva* that an IJ may order an alien deported in the alien's absence, pursuant to § 242B of the Act, even where notice of the deportation hearing sent by certified mail was returned "unclaimed."

Applying *Grijalva,* the BIA concluded in the instant case that the petitioner had not rebutted the presumption of effective service. We find no abuse of discretion in this conclusion. As evidence of nondelivery, Fuentes submitted only her own affidavit, which, in fact, nowhere states that the postal service had not attempted to deliver the notice of the February 9 hearing or had otherwise improperly disposed of the notice. Rather, the petitioner merely declares: "I was not aware that I had a hearing." Fuentes having failed to rebut the presumption of effective service set out in *Grijalva,* the BIA appropriately upheld the IJ's decision denying the petitioner's motion to reopen her deportation proceedings.

## B. *Violation of Due Process Clause*

■ The petitioner next argues that the Board's reading of § 242B—allowing for *in absentia* deportation where the alien's notice of deportation proceedings is returned "unclaimed" to the IJ—violates the Due Process Clause of the Fifth Amendment. We find no merit in this claim.

It cannot be disputed that the use of certified mail to convey notices of deportation proceedings generally fits well within the bounds of the process due to a litigant or prospective litigant. The courts have repeatedly upheld even the use of regular, first-class mail as a constitutionally adequate means of service. *See Weigner v. City of New York,* 852 F.2d 646, 650, 651 (2d Cir. 1988) (citing cases). Nor do we find a basis for an exception to this rule in the instant case merely because the notice was returned "unclaimed." The Supreme Court set forth the due process standard in *Mullane v. Central Hanover Bank & Trust Co.* as follows: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). As has subsequently been observed, "[t]he *Mullane* test does not ask whether notice was actually received...." *Perez–Valdera,* 899 F.Supp. at 184; *see also United States v. Estrada–Trochez,* 66 F.3d 733, 735 (5th Cir. 1995) (due process satisfied where *in absentia* deportation was ordered under § 242(b) in 1987 after notice of deportation hearing, sent to alien by first-class mail, was returned as undeliverable because alien had moved without providing forwarding address); *Torres v. $36,256.80 U.S. Currency,* 25 F.3d 1154, 1161 (2d Cir.1994) ("[W]e do not suggest that the fact the letter was returned to the DEA unclaimed, standing alone, would support a conclusion that notice was insufficient...."); *Weigner,* 852 F.2d at 650 (noting that none of cases court cited for proposition that mailing notice is sufficient to satisfy due process "requires actual receipt of notice that is properly mailed"). It is thus within the bounds of due process to establish a presumption of adequate notice—which the petitioner would be free to rebut—where, as here, there is evidence that attempts were made to deliver the petitioner's notice by certified mail.

## C. *Right to Counsel*

■ Finally, the petitioner argues that the IJ violated her right to counsel by refusing to recognize Bembi as her attorney prior to his filing of a formal notice of appearance in August, 1993, and, in particular, by failing to notify Bembi of her February 9, 1993, depor-

tation hearing. While it is true that "the Due Process clause and the Immigration and Nationality Act afford[ ] an alien the right to counsel of his own choice at his own expense," *Montilla v. INS*, 926 F.2d 162, 166 (2d Cir.1991), we find no denial of this right in the instant case. The IJ informed Bembi as early as October 1992, that he would not be recognized as counsel of record in the petitioner's proceedings until he submitted a formal notice of appearance, yet Bembi failed to file such a notice for nearly a year. Prior to that filing, the IJ acted appropriately in not recognizing Bembi as the attorney of record and, accordingly, in not notifying him of the petitioner's February 9, 1993, deportation hearing.

### III. CONCLUSION

In sum, we find no abuse of discretion on the part of the BIA in upholding the IJ's denial of the petitioner's motion to reopen her deportation proceedings. Nor do we find that the BIA's decision impinged on the petitioner's due process rights, or that the IJ in any way acted to deny the petitioner her right to counsel.

Accordingly, the order of the BIA is affirmed, and the petition for review of the BIA order is denied.