**Mohammed Simon LAHMIDI, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 95–70439.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 1997.

Submission Vacated May 2, 1997.

Resubmitted June 17, 1998.

Decided July 16, 1998.

Russell L. Marshak, Popkin, Shamir & Golan, Los Angeles, California, for petitioner.

Francesco Isgro, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for respondent.

Before: SKOPIL, PREGERSON, and REINHARDT, Circuit Judges.

Opinion by Judge REINHARDT; Partial Concurrence and Partial Dissent by Judge SKOPIL.

REINHARDT, Circuit Judge:

Mohammed Simon Lahmidi seeks review of the Board of Immigration Appeals' (BIA) denial of his motion to reopen his deportation proceedings. The BIA issued an *in absentia* deportation order when Lahmidi failed to appear at his scheduled deportation hearing. In his motion to reopen, Lahmidi argued that he never received notice of the hearing, and the reason was that while he had changed addresses he had not been advised that he was required to notify the INS of any such change. Perhaps even more important, he argued that the BIA should not have applied the new provisions set forth in § 242B, the amendment to the Immigration and Nationality Act (INA) deportation procedures, 8 U.S.C. § 1252b, contained in the Immigration Act of 1990. Pub.L. No. 101–649, 104 Stat. 4978 (1990).[1] We agree with Lahmidi and conclude that, in view of our determination that the new provisions were inapplicable to his proceedings, he has demonstrated "reasonable cause" for his failure to appear. We therefore grant his petition and remand to the BIA with instructions to reopen his deportation proceedings.

## BACKGROUND AND PROCEDURAL HISTORY

Mohammed Simon Lahmidi is a native and citizen of Morocco who entered the United States on May 9, 1987 as a non-immigrant visitor for pleasure. He subsequently adjusted his status to non-immigrant student on May 4, 1988 and attended school until December 1989.

On August 16, 1991, the Immigration and Naturalization Service (INS) issued an order to show cause and served Lahmidi personally at his Portland, Oregon address which he had provided to the INS. The show cause order charged him with deportability as an alien who failed to maintain his non-immigrant student status. It did not advise Lahmidi that he was required to provide the INS or the Office of the Immigration Judge with a record of a change of address or of the consequences of failing to do so.

On June 15, 1992, a notice of hearing to be held on July 9, 1992 was mailed, via certified mail, return receipt requested, to Lahmidi's Portland address. The return receipt was signed by an unknown individual. A second notice of hearing to be held on August 4, 1992 was mailed to the same Portland address, and again the receipt was returned with an unknown signature. An unsigned postcard was then received informing the Immigration Judge of a Van Nuys, California address identified as the "last known address for [ ] Lahmidi." A third notice of hearing to be held on September 17, 1992 was sent to both the Portland and Van Nuys addresses. The Portland notice was returned unclaimed, and the Van Nuys notice was never returned.

When Lahmidi did not appear for the September hearing, the IJ ordered him deported *in absentia*. Lahmidi subsequently moved to reopen the hearing alleging that he had never received any notice of it. The IJ denied the motion on the ground that Lahmidi had been properly served with the order to show cause and that he should have informed the INS of any address change. In reaching this conclusion, the IJ applied the new provisions set forth in the recently enacted amendments to the INA contained in § 242B. Lahmidi then appealed to the Board of Immigration Appeals which affirmed the IJ's decision and dismissed the appeal. The BIA independently reviewed the statutory questions and concluded that the new procedures were applicable, that the Office of the Immigration Judge had provided the statutorily required notice of hearing to Lahmidi, and that his failure to appear at his deportation hearing required his deportation. Petitioner timely filed his petition for review, and we have jurisdiction pursuant to 8 U.S.C. § 1105a(a). Because the BIA's decision states with sufficient par-

---

1. Title 8 U.S.C. § 1252b was subsequently repealed by Pub.L. No. 104–208, Div. C, Title III, § 308(b)(6), Sept. 30, 1996, 110 Stat. 3009–615, which is applicable only to aliens in exclusion or deportation proceedings on April 1, 1997. Thus, the repeal (as well as the transitional rules also enacted by the 1996 act, *see* Pub.L. No. 104–208, Div. C, Title III, § 309(c)(1), Sept. 30, 1996, 110 Stat. 3009–625) does not apply to Lahmidi. The provisions of Pub.L. No. 104–208 insofar as they relate to changes of address, notices of hearing, and related items are, however, markedly similar to those contained in the repealed statute.

ticularity its reasons for denying the petition, we review that decision and "may not rely on the IJ's opinion in deciding the merits of [Lahmidi's] case." *Castillo v. INS*, 951 F.2d 1117, 1120–21 (9th Cir.1991). We grant the petition.

## DISCUSSION

### I.

█ The petition for review presents a question of statutory construction that is of first impression: whether § 242B applies in a case in which the order to show cause was issued before § 242B's effective date, but the notice of hearing was issued after it. Lahmidi argues that the BIA erred when it applied the new procedures under § 242B to him despite the fact that his order to show cause was issued before June 13, 1992, the effective date of the provision. We agree.

Section 1252b of the INA sets forth the procedures, including the notice and due process protections, that the Attorney General must follow before deporting an alien. 8 U.S.C. § 1252b. Congress amended § 1252b by enacting the Immigration Act of 1990 which, through § 242B, required the Attorney General to provide fairer and more specific notice of deportation hearings and imposed harsher penalties upon aliens who failed to appear. It provided, unlike its predecessor, that the order to show cause must notify the alien that he is required to provide notice of any change of address to the INS and that, if such notice is not provided and he fails to appear at a scheduled deportation hearing, the IJ may issue an *in absentia* deportation order. 8 U.S.C. § 1252b(a)(1)(F). The 1990 Act did not specify when the new deportation procedures would take effect, leaving that responsibility to the Attorney General. *See* Section 545(g) of Pub.L. 101–649 as amended Pub.L. 104–208, Div. C, Title III, § 308(g)(6)(B), Sept. 30, 1996, 110 Stat. 3009–623.

Subsequently, the Department of Justice issued a series of Notices stating when § 242B would take effect. Of particular importance to the present petition is the Notice issued on February 12, 1992, in which the Department delayed the effective date of the new provisions until June 13, 1992. 57 Fed. Reg. 5180, 1992 WL 22883. While the February 12th notice set the final effective date, the Attorney General did not specify whether § 242B would apply to proceedings in which an order to show cause had already issued or only to proceedings that had not yet been initiated. We believe that any reasonable analysis of the structure, purpose and effect of § 242B leaves no doubt as to the answer to this question.

The BIA and several courts have applied § 242B, but none has directly confronted the question raised here. Both this court and the BIA have stated in published decisions that § 242B applies only when the notice of hearing is issued after the effective date.[2] In those cases, however, *both* the order to show cause and the notice of hearing had been issued and served upon the petitioner *after* the effective date of the statute. *Sharma v. INS*, 89 F.3d 545 (9th Cir.1996); *In re Gonzalez–Lopez*, Int. Dec. 3198 (BIA Mar. 9, 1993). Such were the facts in all other cases applying § 242B, as well. *See de Morales v. INS*, 116 F.3d 145 (5th Cir.1997); *Fuentes–Argueta v. INS*, 101 F.3d 867 (2nd Cir.1996); *cf. United States v. Perez–Valdera*, 899 F.Supp. 181, 184 (S.D.N.Y.1995) (examining § 242B but applying the pre- § 242B procedures when both the order to show cause and the notice of hearing were issued prior to June 13, 1992). Therefore, prior to the instant proceeding, neither the courts nor the BIA had been required to decide-as we must here-whether issuance of the notice of hearing after the effective date is sufficient to impose the new rules upon an alien when the order to show cause was issued before that date.

**2.** In *Sharma,* we noted without discussion that "Section 242B applies if notice of the hearing was provided after June 13, 1992." *Sharma,* 89 F.3d at 547 n. 2. The BIA announced in *In re Gonzalez–Lopez,* Int. Dec. 3198, (BIA Mar. 9, 1993), that "the previously followed procedures

... still remain in effect where an in absentia order is made ... following service or attempted service of the notice of a hearing, for which the alien failed to appear, made prior to June 13, 1992, ..." *Id.*

When interpreting a statute, we look first to its plain language, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress. *United States v. Hockings*, 129 F.3d 1069, 1071 (9th Cir.1997). While neither § 242B nor its 1996 effective date provision specifically states that both the order to show cause and the notice of hearing must have been served after the effective date in order for the new provision to apply, we think it clear that Congress intended that result, and that the provisions are susceptible to no other interpretation.

(1) The 1996 Effective Date Provision of § 242B.

In the 1996 amendment to the INA, Congress set forth the implementation dates of § 242B as follows:

(1) Notice–Related Provisions—

(A) Subsections (a), (b), (c), and (e)(1) of section 242B ... shall be effective on a date specified by the Attorney General in the certification described in subparagraph (B), which date may not be earlier than 6 months after the date of such certification.

(B) The Attorney General shall certify to the Congress when the central address file system ... has been established ...

Section 545(g) of Pub.L. 101–649 as amended Pub.L. 104–208, Div. C, Title III, § 308(g)(6)(B), Sept. 30, 1996, 110 Stat. 3009–623. The provision states that each of the "notice-related provisions," including orders

to show cause (§ 242B(a)(1)), notices of hearing (§ 242B(a)(2)), and the consequences of failure to appear (§ 242B(c) and (e)), would become effective at the same time. In other words, Congress intended that all of the specified notice and penalty procedures would be implemented on a single date set by the Attorney General.

The effective date provision further states that the agency shall not implement § 242B until six months after it has certified that the "central address file system" is operative. This system enables the Attorney General to compile new addresses and to provide the proper notice required under § 242B. The fact that Congress made the effective date of § 242B contingent on the implementation of the address system demonstrates that Congress intended the notice procedures to be fully operational at the same time that the new penalties and other § 242B provisions would become effective.[3] If Congress intended otherwise, there would have been no need to add a specific provision in the effective date amendment that delayed implementation until the central address file system could become operative. In short, what Congress contemplated was a single integrated procedure to be implemented simultaneously and to be construed so as to operate as a unified whole.

(2) Language and Structure of § 242B.

An examination of § 242B's notice and penalty provisions supports our conclusion that they were designed to function as a single integrated process.[4] To begin with,

---

3. The Attorney General has also construed § 242B in this way. A Department of Justice Notice of February 12, 1992, announced that the Department would delay implementation of § 242B to "allow additional time to implement the notice requirement." 57 Fed.Reg. 5180, 1992 WL 22883 (F.R.). The Notice indicates that the Attorney General would not implement any of § 242B's provisions until all the provisions could be implemented together.

4. Title 8 U.S.C. § 1252b, as amended by § 242B states, in relevant part:
(a) Notices
(1) Order to Show Cause
  In deportation proceedings, written notice [OSC in this section] shall be given in person ... (or if not practicable .... [then] by certified mail

to the alien [or counsel]) specifying the following:
...
(F)(i) The requirement that the alien must immediately provide (or have provided) the Attorney General ... with a written record of an address telephone number (if any) ...
(ii) The requirement that the alien must provide the Attorney General with a written record of any change in the alien's address or telephone number.
(iii) The consequences under subsection (c)(2) of this section of failure to provide address and telephone phone number pursuant to this subparagraph.
(2) Notice of time and place of proceedings ... Written notice shall be given [as in (a)(1) in the OSC or otherwise] of the time and place and the consequences under (c) for failure to appear....

§ 242B(a) establishes improved notice procedures that the INS must follow. Subsection 242B(a)(1) requires that a written order to show cause shall be served in person if practicable or by certified mail to the alien. Furthermore, (a)(1) states that the order to show cause must specify the nature of the proceedings, the charges against the alien, the alien's right to counsel, *the requirement that the alien provide a written record of any address change,* and the consequences of failing to provide a record of address change. § 242B(a)(1)(A)–(F). Subsection 242B(a) also includes the provision requiring that the Attorney General establish and maintain the central address file system that would enable him to effectively administer the enhanced notice procedures. Finally, § 242B(a) requires that detailed notice of hearing also be personally served or sent by certified mail.

In accordance with the notice requirements of § 242B(a), subsections (c) and (e) impose strict sanctions upon an alien for failing to appear at the deportation hearing once he has been provided with proper notice. The statute provides that any alien receiving such notice who fails to appear shall be deported by an *in absentia* order of deportation, and, if he received oral notice as well, he is ineligible for future relief for five years. 8 U.S.C. § 1252b(c), (e)(1) Thus, the ultimate punishment for an alien who fails to provide a notice of a change of address is harsh indeed. Moreover, rescission of an *in absentia* deportation order is available only under very limited circumstances.

We conclude that subsections (a), (c), and (e) must be read together, that the provisions are inextricably intertwined, and that the sanctions set forth in subsections (c) and (e) cannot be imposed unless the alien receives the procedural protections provided in subsection (a). Such is indeed the essence of the statutory amendment: the notice provisions were strengthened so that it could fairly be assumed that aliens who failed to appear did so knowingly, and severe sanctions were then adopted premised on the assumption that their deportation would be both fair and appropriate. Our conclusion is supported by the fact that several of the subsections cross-reference each other and state that their operation is contingent one on the other. First, § 242B(a)(1)(F) states that an alien who is notified of the requirement that he provide a written record of a change of address must also be informed of the consequences of not providing this information under subsection (c)(2). If the alien fails to provide the required record of address change under (a)(1)(F) after being informed that he must do so, the INS and the Office of the Immigration Judge need not provide notice under (c)(2). Section 242B(c) contemplates that an alien who has kept the agency informed as to his address will be served with the necessary notice under subsection (a)(2), before a failure to appear can lead to an *in absentia* deportation order. Similarly, the five year exclusion set forth in subsection (e) is not effective unless the alien was given the proper notice under subsection (a)(2) as well as oral notice. All of this is preceded in the amendment by the requirement that the

A written notice will not be required if the alien has failed to provide the address required under (a)(1)(F).

**(c)** Consequences for failure to appear

**(1)** Any alien who, after written notice required under (a)(2) has been provided ... [and] does not attend the proceeding ... shall be ordered deported ... in absentia if there is clear, unequivocal, and convincing evidence that written notice was so provided.... [W]ritten notice shall be considered sufficient if provided at the most recent address provided under (a)(1)(F).

**(2)** ... No written notice shall be required under [(c)(1)] if the alien has failed to provide the address required under (a)(1)(F).

**(3)** ... Such an order may be rescinded only ... because of exceptional circumstances ... or if the alien did not receive notice in accordance with subsection (a)(2).

**(e)** Limitation on discretionary relief for failure to appear

**(1)** At deportation proceedings

Any alien against whom a final order of deportation is entered in absentia under this section and who, at the time of the notice described in subsection (a)(2) of this section, was provided oral notice, either in the alien's native language or in another language the alien understands, of the time and place of the proceedings and of the consequences under this paragraph of failing, other than because of exceptional circumstances (as defined in subsection (f)(2) of this section) to attend a proceeding under section 1252 of this title, shall not be eligible for relief described in paragraph (5) for a period of 5 years after the date of the entry of the final order of deportation.

INS notify the alien that he must advise the INS of any change of address and the consequences of his failure to do so. We conclude that, by making subsections (a), (c), and (e) interdependent upon each other and effective concurrently, Congress clearly intended that the sanctions contained in the amendment would be applied at such time as the notice provisions had become effective and the INS had complied with their requirements.

To apply the rule as the government requests would contravene the statute's clear intent. The BIA essentially contends that the penalty provisions should apply to aliens who were not afforded the notice and procedural protections required by the 1990 Amendment. In Lahmidi's case, the order to show cause was issued before § 242B became effective and did not comply with the new requirements established under § 242B. In particular, the order failed to advise him that he must provide the Attorney General with written notice of an address change, and failed to advise him of the consequences of his failure to do so. § 242B(a)(1)(F)(ii). Here, the BIA seeks to penalize Lahmidi by imposing § 242B's new drastic sanctions for failing to comply with the statutory requirements when he was *not* informed of his duty to do so as mandated by the statute. Congress certainly did not intend such an unbalanced implementation of the amendment when it enacted § 242B. To the contrary, it intended that aliens subject to the new penalties would receive the benefit of the enhanced notice procedures first. Accordingly, we conclude that § 242B does not apply in cases, such as Lahmidi's, in which the order to show cause was issued before the statute's effective date, even though the notice of hearing was issued after that date.

(3) Legislative History.

The plain language of the statute and its effective date provision controls our decision regarding the applicability of § 242B in Lahmidi's case. Nevertheless, we also note that the legislative history of § 242B fully supports our result. The legislative history states that Congress enacted both the notice and penalty provisions of § 242B to address the failure of aliens to appear at their scheduled deportation hearings. *See* H.R.Conf. Rep. No. 955, 101st Cong., 2d Sess. 132 (1990) reprinted in 1990 U.S.C.C.A.N. 6784, 6797 (noting that the provisions were designed to "ensure that aliens properly notified of impending deportation proceedings ... in fact appear for such proceedings"); H.R.Rep. No. 681, 101st Cong., 2d Sess. 150–51 (1990) reprinted in 1990 U.S.C.C.A.N. 6472, 6556–57 (noting that the General Accounting Office recommended improved notice procedures and heightened penalties to address the 27% "absconsion rate" from deportation hearings); *see also United States v. Perez–Valdera*, 899 F.Supp. 181, 185–86 n. 2 (S.D.N.Y.1995) (noting that the legislative history of § 242B indicates "that Congress' primary motivation in instituting both heightened notice requirements and mandatory deportation for failure to appear was the high number of aliens who failed to appear at their hearings"). The House Report also indicates that the notice provisions and the penalties would operate together to further this single goal. *See* H.R.Rep. No. 681, 101st Cong., 2d Sess. 150–51 (1990) reprinted in 1990 U.S.C.C.A.N. 6472, 6556–57. The new notice provisions were enacted to ensure that aliens understood the deportation process, and the more stringent penalties were enacted to impose sanctions upon aliens who failed to appear after receiving adequate notice to do so.[5] Congress intended that the new notice rules, including the procedures for orders to show cause and notices of hearing, would come into effect at the same time to ensure that any alien subject to the stricter penalties would first receive the enhanced notice.

(4) Conclusion.

The BIA erred in applying § 242B in Lahmidi's case when it should have applied the pre- § 242B standards. Such an error would normally require that we remand to the BIA

---

5. In *Perez*, the district court noted that the new notice and penalty provisions functioned in complement: "Because the consequences to an alien of a failure to appear are more severe under the 1990 Act, it is not surprising that the notice requirements were strengthened." *Perez*, 899 F.Supp. at 185–86 n. 2.

to apply the correct legal provisions. In the instant case, however, because in the following section we conclude as a matter of law that Lahmidi has demonstrated "reasonable cause" for his failure to appear, we grant the petitioner's motion to reopen his deportation proceedings.

## II.

■ We now turn to Lahmidi's argument that he has demonstrated reasonable cause requiring reopening of his deportation hearing.[6] In his motion to reopen, Lahmidi argued that the reasonable cause for his failure to appear was that he had not received notice of the September 17, 1992 hearing and had not been informed that he was required to provide a record of his address change. Under these circumstances, Lahmidi contended, he was unaware that the hearing would be held and he had reasonable cause for failing to appear. Accompanying his motion, Lahmidi submitted an affidavit stating the following pertinent facts:

> I was not told that I must provide the INS office with any change of address.... I never received any notice of a scheduled hearing.... I have never received a registered letter or any other type of notice of my schedule [sic] hearing date.... The INS office never told me the significance of the OSC other that [sic] to say further notice would be provided.

These facts are not in dispute.

Our decision in *Urbina–Osejo v. INS*, 124 F.3d 1314 (9th Cir.1997), controls the determination of this issue. In *Urbina–Osejo*, the order to show cause did not inform the petitioner that she was required to provide a record of a change of address, and, consequently, she never provided such a record after she moved from her original address. *Id.* at 1316. There was no evidence that the

agent who served the order to show cause informed Urbina of the change-of-address requirement. In her supporting declaration, she stated that she had no knowledge of the need to inform the government of an address change and no knowledge that a hearing would be held. *Id.*

This court concluded that "there is reasonable cause for failure to appear when an alien has not received notice of the time and place of the hearing due to a change of address, and the alien was not informed of a requirement to advise the INS of any change of address." *Id.* at 1317. In all relevant aspects, Lahmidi's circumstances are the same as *Urbina's*. There is no evidence that Lahmidi ever received notice that he must notify the INS or the Office of the Immigration Judge of his address change. The show cause order did not provide information about this requirement. Lahmidi swore in his affidavit that he did not know of the requirement and that the agent who served the order to show cause did not explain it to him. As a result, Lahmidi did not receive notice of the hearing and failed to appear. The BIA reviewed these facts but nonetheless denied his motion to reopen.[7]

The evidence in the record before the BIA demonstrates that Lahmidi did not receive notice that he was required to provide information of a change of address. Accordingly, we conclude as a matter of law that Lahmidi has demonstrated "reasonable cause" for failing to appear, grant his petition for review, and direct the BIA to grant his motion to reopen his deportation proceedings.

PETITION GRANTED.

SKOPIL, Senior Circuit Judge, concurring in part and dissenting in part.

The majority decides that an amendment to the Immigration and Nationality Act that

---

**6.** To the extent that it might be argued that under the 1990 amendment the heightened "exceptional circumstances" standard is applicable when a petitioner fails to notify the INS of an address change-and we do not consider that question here-the new standard is inapplicable to Lahmidi's petition for the same reasons the other provisions described above do not apply.

**7.** The dissent notes that, in *Urbina–Osejo*, the court remanded for further factual findings as to whether the petitioner was informed that she was required to provide notice of her address change. In that case, however, the record was silent as to whether she had been so informed, whereas here the evidence is uncontested that Lahmidi was *not* informed that he should advise the Office of the Immigration Judge of his change of address.

became effective after Lahmidi was personally served with an order to show cause but before he was three times notified of hearing dates should not be applied. The BIA concluded otherwise, ruling that the amendment applies whenever service or attempted service of the notice of hearing was made after the effective date. The BIA did so based on its own prior decisions, but it could also have relied on Ninth Circuit precedent stating that "[s]ection 242B applies if notice of the hearing was provided after June 13, 1992." *Sharma v. INS,* 89 F.3d 545, 547 n. 2 (9th Cir.1996). Nevertheless, notwithstanding the deference we owe to the Board's interpretation of the Act, *see Fisher v. INS,* 79 F.3d 955, 961 (9th Cir.1996) (en banc), and our own prior statement regarding the applicability of § 242B, I do not disagree with the majority's conclusion that the amendment should not apply to Lahmidi's circumstances. The interrelations of the various subsections of § 242B support the majority's conclusion that Congress intended to implement a single integrated process..

I do disagree with the majority's decision to decide the factual question of whether Lahmidi has demonstrated "reasonable cause" for missing his deportation hearing. The majority concludes "as a matter of law" that reasonable cause exists because Lahmidi did not know that he was required to notify the INS of his address change. The Immigration Judge in this case, however, found that Lahmidi failed to show "good cause" for failing to appear, reasoning that Lahmidi knew of his obligation to keep the INS informed of any address changes, and "at best . . . did not take reasonable steps to insure that he received the notice that he expected to receive" and "at worst . . . acted in bad faith, hoping to avoid the hearing." The majority ignores these factual findings, electing instead to review only the BIA's decision which does not decide this factual issue but turned solely on the legal issue of whether the new law applies.

The majority acknowledges that a remand is ordinarily required to allow the BIA to apply the law to a given case. The majority reasons, however, that *Urbina-Osejo v. INS,* 124 F.3d 1314 (9th Cir.1997), excuses that requirement and permits this court in the first instance to find that Lahmidi had reasonable cause sufficient to compel the BIA to reopen his deportation proceedings. In *Urbina-Osejo,* a majority of the panel held that there is reasonable cause for failure to appear at a deportation hearing when "the alien was not informed of a requirement to advise the INS of any change of address." 124 F.3d at 1317. Even that panel, however, found it necessary to remand to the BIA "because such a factually intensive question cannot be resolved on appeal." *Id.* at 1318. I would do so here. Not only should the INS be permitted to make a record if necessary and the IJ to make findings based on that record, but the BIA should be given first opportunity to decide if *Urbina-Osejo* is applicable to the facts that are found.

In *Urbina-Osejo,* for instance, the alien was a minor who was moved cross-county by her family. In contrast, here the IJ found that Lahmidi, then 28 years old, "is obviously an educated person, as he was a student for several years, and is evidently able to read and write in the English language." I would give the INS the chance to argue the importance of such distinctions and the BIA the opportunity to rule on the issue. Accordingly, having corrected the Board's legal error, we should now remand to allow the Board in the first instance to apply law to facts.