Luis Arturo ZAPATA, Petitioner,

v.

John ASHCROFT, Attorney General of the United States, Respondent.

No. 03–2862.

United States Court of Appeals, Third Circuit.

Argued March 12, 2004.

Decided April 1, 2004.

---

Stephen A. Lagana (Argued), Lagana & Associates, Lawrence, MA, for Petitioner.

* Honorable Milton I. Shadur, Senior District Judge for the United States District Court for

Colette J. Winston (Argued), Peter D. Keisler, David V. Bernal, Douglas E. Ginsburg, Lyle D. Jentzer, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: SLOVITER and NYGAARD, Circuit Judges, and SHADUR,* District Judge.

## OPINION OF THE COURT

SHADUR, District Judge.

Luis Arturo Aragon Zapata ("Zapata") seeks review of a decision by the Board of Immigration Appeals ("BIA") that affirmed without opinion the decision of an immigration judge ("IJ") denying Zapata's motion to reopen his removal proceedings. We conclude both that the affirmance-without-opinion procedure that the BIA used did not violate Zapata's due process rights and also that the BIA did not abuse its discretion by affirming the IJ decision that denied Zapata's motion to reopen. Accordingly, we deny Zapata's petition for review.

Because both parties are familiar with the long and winding path that this case has taken to reach our doorstep, we review the facts only as necessary for our ruling. On April 4, 1995 Zapata was personally served with an Order To Show Cause ("Order") regarding his claim for asylum (R. 135–39). At that time Zapata signed a form acknowledging both (1) that he had been served with the Order and (2) that he had received its accompanying explanations and forms (R. 139). Among the materials Zapata received was Form I–221, stating in relevant part (in Spanish as well as in this English version, with emphasis in the original of both versions) (R. 138):

the Northern District of Illinois, sitting by designation.

You are required to provide written notice, within five (5) days, of any change in your address or telephone number to the office of the Immigration Judge listed in this notice. Any notices will be mailed only to the last address provided by you.... If you fail to appear at the scheduled deportation hearing, you will be ordered deported *in your absence* if it has been established that you are deportable and you have been provided the appropriate notice of the hearing.

When Zapata arrived for his hearing on April 26, 1995, the IJ determined that because the Order and other forms had not been explained to Zapata orally in his native Spanish, service was defective and thus dismissed the entire case for lack of jurisdiction (R. 105–11; 8 C.F.R § 242.1(c) (as effective until Aug. 17, 1995)).[1] But on appeal the BIA issued a written opinion holding that the IJ should not have terminated Zapata's proceeding because (1) the government's obligation could be satisfied by its policy that mandated giving Zapata bilingual written explanatory materials and (2) Zapata had not overcome the presumption that the policy was followed in his case (R. 87–88, 133).

On remand the IJ reviewed the evidence and ordered Zapata's removal on May 21, 1997—an order that was issued in absentia because Zapata had been sent notice of the hearing but did not appear despite the "reasonable opportunity to be present" (R. 63). Before entry of that in absentia ruling, the government had sent three notices of an upcoming hearing to Zapata's last known address, though it is quite clear that none actually reached him: the first was marked "return to sender" and "unclaimed" (R. 84), the second was signed as received by an unidentified individual who misspelled Zapata's name as "Sapata" (R. 73) and the third was returned to sender as "attempted not known" (R. 68).

Zapata filed a timely motion to reopen, arguing that the in absentia proceeding was invalid because he had not received proper notice (R. 57). That motion was denied by an IJ on the premise that notice sent to Zapata's last known address was sufficient because he bore the responsibility for notifying the government of any change in that address (R. 44–45). And on May 29, 2003 an IJ representing the BIA affirmed that denial without opinion (R. 3). Zapata then filed this petition for review.

■ Given the timing of this case, our jurisdiction arises under a now-repealed provision of the Immigration and Nationality Act (8 U.S.C. § 1105a (repealed)), as amended by the transitional rules of the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA");[2] *see Sierra v. Romaine*, 347 F.3d 559, 564–65 (3d Cir.2003); *Kalaw v. INS*, 133 F.3d 1147, 1149–50 (9th Cir.1997)). And because the BIA's May 29, 2003 order denying Zapata's motion to reopen is a final agency action, it is reviewable by this Court (Reg. §§ 241.1(a) and 3.1(e)(4)(ii);[3]

1. All further references to 8 C.F.R. provisions will take the form "Reg. § —," omitting the repetition of "8 C.F.R."

2. IIRIRA renumbered many of the Code sections applicable to Zapata's case. Although his action is technically controlled by the earlier system, we will use current section numbers to refer to Code sections that were merely renumbered. Any section that governs Zapata's situation but was repealed and

substantively changed is referred to by its original section number, followed by "repealed."

3. Reg. §§ 3.1(e)(4)(i) and (ii) are identical in language to Reg. §§ 3.1(a)(7)(i) to (iii). Because the BIA cited to the former as the authorizing regulation, this opinion will consistently deal only with that provision.

*Sevoian v. Ashcroft,* 290 F.3d 166, 171 (3d Cir.2002)).

 Here the BIA's final order was issued pursuant to its procedure under which one BIA member drafts a brief order affirming the decision below without opinion (R. 1; Reg. § 3.1(e)(4)). We have plenary review as to whether the BIA's use of that streamlined procedure violated Zapata's constitutional rights (*Dia v. Ashcroft,* 353 F.3d 228, 238 (3d Cir.2003)(en banc)). *Dia* has already held that the BIA's adoption of the streamlining regulations does not inherently offend an alien's due process rights. So the question is whether the BIA conformed to those regulations, which permit streamlined treatment if a single BIA member has determined (Reg. § 3.1(e)(4)(i)):

> that the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial; and that
>
> > (A) The issues on appeal are squarely controlled by existing Board or federal court precedent and do not involve the application of precedent to a novel factual situation; or
> >
> > (B) The factual and legal issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion in the case.[4]

Essentially Zapata contends that his situation was not an appropriate one for employing the regulatory scheme because the underlying question as to whether the in absentia proceeding was properly conducted raised a substantial due process ques-

tion not squarely controlled by precedent. We disagree.

Although we have plenary review over the constitutionality of the BIA's determination to put the streamlined procedure into action, we review the underlying decision not to grant Zapata's motion to reopen (and hence the eventual impact of that decision on the choice to use the procedure) under a deferential abuse of discretion standard (*Sevoian,* 290 F.3d at 173–74). And because the BIA's orders under that procedure omit its own explanation or reasoning (Reg. § 3.1(e)(4)(ii)), we must turn to the combined reasoning of prior IJ and BIA orders to determine if the procedure was properly applied to Zapata's case (R. 44–45, 87–88; *Alaelua v. INS,* 45 F.3d 1379, 1381–82 (9th Cir.1995)).

On that score it may fairly be assumed that Zapata never actually received any of the three notices that preceded his May 21, 1997 hearing. But that does not end our inquiry, because the relevant statute and regulation establish that written notice "shall be considered sufficient" so long as it is sent to the address that the alien has most recently provided to the government (8 U.S.C. § 1229a(b)(5)(A); Reg. § 3.26(d); *Dobrota v. INS,* 311 F.3d 1206, 1211 (9th Cir.2002)).

Obviously that proxy for actual notice can operate only where an alien has previously been satisfactorily informed of his duty to update his address with the government should it change (*see Lahmidi v. INS,* 149 F.3d 1011, 1017 (9th Cir.1998)). But as already noted, the initial Order that was personally served on Zapata expressly informed him that he must notify the gov-

---

4. As the government would have it, the BIA's decision to use the procedure is a judicially unreviewable action "committed to agency discretion by law" (5 U.S.C. § 701(a)(2)) because there is no adequate standard available to evaluate that choice (*Lincoln v. Virgil,* 508 U.S. 182, 190–91, 113 S.Ct. 2024, 124 L.Ed.2d 101 (1993)). On the contrary, we hold that the standard articulated in the regulations (informed by previous written decisions by the IJ and BIA) affords us with a sufficiently detailed benchmark to evaluate whether the BIA adhered to its own otherwise valid procedure.

ernment immediately if his address changed and (in boldface type) that his deportation could be ordered in absentia if he failed to appear (R. 138; 8 U.S.C. § 1229(a)(1)(F)(ii); Reg. § 3.15(b)(7)). And, as the BIA held on the first appeal, the bilingual documents given to Zapata sufficiently complied with the government's duty to explain that responsibility to him fully (R. 87; Reg. §§ 242.1(c)(as effective until Aug. 17, 1995) and 3.15(d)(2)). Because Zapata thus had to know that he was required to tell the government if he changed his address yet did not do so, this scenario falls easily within the contours of the situations contemplated by existing precedent and does not raise a new or substantial issue requiring the BIA to forgo its streamlined procedure.

After engaging in this multi-layered review, we find it clear that the IJ did not abuse his discretion when he determined that Zapata's motion to reopen based on a lack of notice should not be granted, given his failure to inform the government of his change of address as required. And because that determination was squarely controlled by existing precedent and did not involve applying that precedent to a new fact situation, the BIA's decision to use the streamlined procedure did not, even when scrutinized under plenary review, violate Zapata's constitutional right to due process. We therefore deny review of the BIA's final order in which it denied Zapata's motion to reopen.

