# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 8, 2022

Lyle W. Cayce
Clerk

No. 20-60834

Miguel Angel Calle-Yanza,

*Petitioner*,

*versus*

Merrick Garland, U.S. Attorney General,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A071 524 146

Before Richman, *Chief Judge*, and Wiener and Willett, *Circuit Judges*.

Per Curiam:*

Miguel Angel Calle-Yanza asserts that the Board of Immigration Appeals (BIA) abused its discretion by denying his motion to reopen his immigration proceedings after an Immigration Judge (IJ) entered an *in absentia* order of deportation. He claims that he did not receive notice of his

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-60834

hearing because the immigration court's correspondence was mailed to an attorney who did not represent him. The BIA applied § 242B (New § 242B) of the Immigration and Nationality Act (INA).[1] Calle-Yanza asserts that the BIA should have applied § 242(b) (Old § 242(b)) because his order to show cause was issued before New § 242B went into effect.[2] We agree, and we therefore grant Calle-Yanza's petition for review, vacate the BIA's decision, and remand this case with instructions to reevaluate Calle-Yanza's motion under Old § 242(b).

## I

This case turns on which version of the statute applies to Calle-Yanza's immigration proceedings: New § 242B or Old § 242(b). We begin by reviewing the differences between the two versions, then we discuss the facts and procedural history of Calle-Yanza's case.

## A

Before the Immigration Act of 1990, Old § 242(b) governed deportation proceedings.[3] It provided that an "alien shall be given notice, reasonable under all the circumstances, of the nature of the charges against him and of the time and place at which the proceedings will be held."[4] It further provided for an *in absentia* deportation order "[i]f any alien has been given a reasonable opportunity to be present at a [deportation] proceeding"

---

[1] 8 U.S.C. § 1252b (Supp. II 1990). Congress has since repealed this provision. *Maradia v. Garland*, 18 F.4th 458, 462 (5th Cir. 2021); *see also* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996).

[2] *See* 8 U.S.C. § 1252(b) (1988).

[3] *In re Cruz-Garcia*, 22 I. & N. Dec. 1155, 1156 n.1 (BIA 1999).

[4] § 1252(b)(1).

No. 20-60834

and "without reasonable cause fails or refuses to attend."[5]  An alien could move at any time to reopen an *in absentia* order if he could establish "reasonable cause" for his absence.[6]

In 1990, Congress "significantly amended" the INA.[7]    The amendments left Old § 242(b) intact but added New § 242B, which altered the statutory framework.[8]  New § 242B required the Attorney General to provide an alien with a written order to show cause in person or through service by certified mail to the alien or his counsel of record.[9]  The order to show cause was required to inform a non-detained alien that: he must immediately provide the Attorney General with an address and telephone number at which he may be contacted; he must immediately advise the Attorney General of any changes in his contact information; and, if he failed to do so, written notice of the time and place of his deportation proceedings would not be required.[10]  If the alien provided his contact information, the government had to provide written notice of the time and place of any proceedings and the penalties for failing to appear.[11]  If an alien failed to attend his deportation hearing, the IJ was required to order him deported *in absentia* should it be established by "clear, unequivocal, and convincing

---

[5] § 1252(b); *see Williams-Igwonobe v. Gonzales*, 437 F.3d 453, 455 (5th Cir. 2006).

[6] § 1252(b); *see Rodriguez-Manzano v. Holder*, 666 F.3d 948, 952-53 (5th Cir. 2012).

[7] *de Morales v. INS*, 116 F.3d 145, 147 (5th Cir. 1977).

[8] *Id.*

[9] 8 U.S.C. § 1252b(a)(1) (Supp. II 1990); *see Ramos-Portillo v. Barr*, 919 F.3d 955, 959 (5th Cir. 2019).

[10] § 1252b(a)(1); *see Ramos-Portillo*, 919 F.3d at 959.

[11] § 1252b(a)(2)(A)-(B), (c)(2); *see Ramos-Portillo*, 919 F.3d at 959.

evidence that the written notice was so provided and that the alien [wa]s deportable."[12]

The 1990 amendments further provided that a deportation order entered *in absentia* against an alien could be rescinded only "upon a motion to reopen filed within 180 days after the date of the order of deportation if the alien demonstrate[d] that the failure to appear was because of exceptional circumstances," or "upon a motion to reopen filed at any time if the alien demonstrate[d] that the alien did not receive notice in accordance with [the requirements of New § 242B]."[13] It defined "exceptional circumstances" as "circumstances (such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances) beyond the control of the alien."[14]

In sum, New § 242B changed the statutory regime in two ways that are relevant here: it introduced a 180-day time limit on filing motions to reopen, and it replaced the "reasonable cause" standard with the "exceptional circumstances" standard.

Congress did not specify when the new procedures in the 1990 amendments to the INA would take effect, leaving it to "a date specified by the Attorney General."[15] The Attorney General repeatedly delayed the effective date "in order to allow additional time to implement the notice

---

[12] § 1252b(c)(1).

[13] § 1252b(c)(3)(A)-(B).

[14] § 1252b(f)(2).

[15] *See* Pub. L. No. 101-649, § 545(g), 104 Stat. 4978, 5066 (1990); *see also Lahmidi v. INS*, 149 F.3d 1011, 1013 (9th Cir. 1998).

requirement."[16] New § 242B ultimately took effect on June 13, 1992.[17] The Attorney General, however, "did not specify whether [New] § 242B would apply to proceedings in which an order to show cause had already issued or only to proceedings that had not yet been initiated."[18]

## B

Calle-Yanza, a native and citizen of Ecuador, entered the United States without inspection. On June 3, 1992, *before* New § 242B went into effect, immigration authorities detained Calle-Yanza and issued him an order to show cause charging him with deportability. The order directed Calle-Yanza to appear before an IJ "at [a] time and date to be set later," and it advised him that "[f]ailure to attend the hearing at the time and place designated hereon may result in a determination being made by the [IJ] in your absence." On June 11, 1992, Mike Herrera entered his appearance as Calle-Yanza's counsel of record in a "Deportation (Including Bond Redetermination)" proceeding. Several days later, Calle-Yanza was released from detention on bond.

On July 28, 1992, *after* New § 242B went into effect, the IJ sent Herrera a notice of hearing via certified mail. The immigration court scheduled Calle-Yanza's hearing for August 10, 1992. The notice of hearing warned Calle-Yanza that his failure to appear in the absence of "exceptional circumstances" may result in an *in absentia* deportation order, referencing New § 242B's language. Although the certified mail was delivered, neither Herrera nor Calle-Yanza appeared at the hearing. The IJ determined that

---

[16] Delay of Effective Date of Notice-Related Provisions of Section 242B of the Immigration and Nationality Act, 57 Fed. Reg. 5180-03, 5180 (Feb. 12, 1992).

[17] *Id.* at 5180-81.

[18] *Lahmidi*, 149 F.3d at 1013.

No. 20-60834

Calle-Yanza was properly notified and, applying Old § 242(b), determined that he did not provide "reasonable cause" for his failure to attend. The IJ conducted the hearing in his absence and ordered Calle-Yanza deported. In a letter to Herrera, the IJ notified Calle-Yanza of its decision and his right to appeal, but no appeal was filed.

Nineteen years later, in December 2011, Calle-Yanza retained new counsel, Benjamin Bratter, and filed a motion to reopen his proceedings and rescind his *in absentia* deportation order. He argued that his failure to appear at his 1992 deportation hearing was due to ineffective assistance of counsel from two other attorneys, Eloy Arcia and Zvi Samuels, whom he had hired to represent him at his deportation proceedings. The motion explained that Calle-Yanza's failure to appear at his 1992 hearing "was through no fault of his own but rather a direct result of [his] previous attorney's incompetence." The motion did not mention Herrera, nor did Calle-Yanza's attached affidavit. The IJ denied the motion. Applying New § 242B, the court concluded that the immigration court properly notified Calle-Yanza about his hearing because the notice of hearing was sent by certified mail to Herrera. To the extent that Calle-Yanza was arguing that Herrera did not provide him with that notice, the IJ determined that such a claim of "exceptional circumstances" was untimely because it needed to be filed within 180 days of the *in absentia* order.

The BIA dismissed Calle-Yanza's appeal in May 2012. Applying New § 242B, the Board agreed with the IJ that Calle-Yanza failed to establish either lack of notice or "exceptional circumstances" excusing his failure to appear. Calle-Yanza's counsel had argued in his appellate brief that his client never hired Herrera, but the BIA refused to give evidentiary weight to that assertion because Calle-Yanza did not make that assertion in his affidavit. The Board further reasoned that even if it were to accept the assertion, Calle-Yanza "d[id] not provide any details or make any further assertions regarding

6

the actions of [Herrera]" apart from arguing that his failure to appear "was the direct result of his previous attorney's incompetence."

Several years later, in 2018, Calle-Yanza filed a second motion to reopen. For the first time, Calle-Yanza personally asserted in an affidavit that Herrera did not represent him in his deportation proceedings. He argued that he was not notified of his 1992 deportation hearing because the notice of hearing was sent to Herrera, who "only represented him in bond proceedings." He also argued that he was not subject to time limitations on his motion to reopen nor the "exceptional circumstances" standard because his order to show cause was issued before the effective date of New § 242B.

The BIA ruled on the motion in July 2019. The BIA construed Calle-Yanza's filing as a motion for reconsideration of its 2012 decision "[t]o the extent" that Calle-Yanza sought to have his 1992 *in absentia* order rescinded. It denied the motion as untimely.

Calle-Yanza appealed to this court. The Government filed an unopposed motion to remand the case so the BIA could "have the opportunity to reevaluate its decision construing [Calle-Yanza]'s motion to be a motion to reconsider and denying it as untimely, given that there are no time or numerical limitations for a motion to reopen a deportation order entered in absentia based on a lack of notice." We granted the motion.

On remand, the BIA vacated its July 2019 decision but again construed Calle-Yanza's motion to reopen as an untimely motion to reconsider its May 2012 decision. Despite the time bar, it decided to consider the motion on the merits sua sponte. The Board determined that New § 242B governed Calle-Yanza's deportation proceedings because his notice of hearing was mailed after the provision's effective date. It rejected Calle-Yanza's assertion that Herrera did not represent him during the proceedings as "belied by the record." It also concluded that Calle-Yanza did not make a

No. 20-60834

valid ineffective-assistance-of-counsel claim. Lastly, the Board determined that even if Calle-Yanza had raised a valid ineffective-assistance-of-counsel claim, "the motion to reopen is untimely because it was filed more than 180 days after the August 10, 1992, deportation order," and the due diligence required to warrant equitable tolling had not been shown. This appeal followed.

## II

Calle-Yanza presses two arguments. First, he asserts that the BIA erred when it construed his 2018 motion to reopen his deportation proceedings as an untimely motion to reconsider the BIA's 2012 decision. Second, he argues that the BIA abused its discretion by erroneously applying New § 242B to his motion instead of Old § 242(b).

## A

"'Motions to reopen deportation proceedings are disfavored,' and the party seeking relief has a heavy burden."[19] "We review 'the denial of a motion to reopen under the highly deferential abuse-of-discretion standard.'"[20] Under this standard, "[t]he BIA 'abuses its discretion' when it 'issues a decision that is capricious, irrational, utterly without foundation in the evidence, based on legally erroneous interpretations of statutes or regulations, or based on unexplained departures from regulations or established policies.'"[21] We review questions of law de novo, but we will defer to the BIA's interpretations of immigration statutes and regulations "unless the record reveals compelling evidence that the BIA's interpretation

---

[19] *Mendias-Mendoza v. Sessions*, 877 F.3d 223, 226 (5th Cir. 2017) (quoting *Altamirano-Lopez v. Gonzales*, 435 F.3d 547, 549-50 (5th Cir. 2006)).

[20] *Id.* (quoting *Barrios-Cantarero v. Holder*, 772 F.3d 1019, 1021 (5th Cir. 2014)).

[21] *Id.* at 227 (quoting *Barrios-Cantarero*, 772 F.3d at 1021).

No. 20-60834

is incorrect."[22]  "Though our review is generally limited to the BIA's decision, we may also review the IJ's decision when it influences the BIA's decision or where the BIA has adopted all or part of the IJ's reasoning."[23]

A motion to reopen and a motion to reconsider are two "separate and distinct motions with different requirements."[24]  A motion to reopen "seeks to introduce new evidence."[25]  It "allows reopening at a later date based on new facts, supported by affidavits or other evidentiary material."[26]  A motion to reconsider, on the other hand, must "identify a change in the law, a misapplication of the law, or an aspect of the case that the BIA overlooked."[27]  It "urges an adjudicative body to re-evaluate the record evidence only."[28]  Unlike the relatively generous time limits for filing motions to reopen that we discussed above, a motion to reconsider must be filed within thirty days after the mailing of the challenged Board decision.[29] When determining whether a motion is one to reopen, reconsider, or a

---

[22] *Gomez-Palacios v. Holder*, 560 F.3d 354, 358 (5th Cir. 2009); *see also Vetcher v. Barr*, 953 F.3d 361, 366 (5th Cir. 2020).

[23] *Vetcher*, 953 F.3d at 366.

[24] *Pierre v. INS*, 932 F.2d 418, 421 (5th Cir. 1991), *overruled on other grounds by Stone v. INS.*, 514 U.S. 386 (1995) (quoting *Sanchez v. INS*, 707 F.2d 1523, 1529 (D.C. Cir. 1983)).

[25] *Zhao v. Gonzales*, 404 F.3d 295, 301 (5th Cir. 2005).

[26] *Gonzalez Hernandez v. Garland*, 9 F. 4th 278, 285 (5th Cir. 2021) (internal quotation marks and citation omitted), *petition for cert. filed* (U.S. Mar. 31, 2022) (No. 21-1323).

[27] *Zhao*, 404 F.3d at 301.

[28] *Id.*

[29] *See* 8 C.F.R. § 1003.2(b)(2), (c)(2).

combination of both, we examine the motion's substance, not simply its label.[30]

Here, Calle-Yanza filed a second motion to reopen in 2018, seeking to reopen his proceedings and rescind his *in absentia* deportation order. The BIA construed the filing as an untimely motion to reconsider the BIA's 2012 denial of his initial motion to reopen. But the motion included new factual evidence. For the first time, Calle-Yanza personally asserted in an affidavit that his initial attorney, Herrera, did not represent him in his deportation proceedings and did not contact him after his release. Calle-Yanza's appellate attorney had made a similar assertion about Herrera in his 2012 briefing to the BIA, but the Board declined to give it evidentiary weight. Because Calle-Yanza introduced new evidence, his motion was one to reopen his deportation proceedings.[31] We therefore turn to the question whether the motion to reopen is untimely, which turns on whether Old § 242(b) or New § 242B governs Calle-Yanza's immigration proceedings.

## B

Calle-Yanza argues that the BIA abused its discretion by applying the wrong statute when it considered his motion. The BIA applied New § 242B, which became effective on June 13, 1992, instead of Old § 242(b). Calle-Yanza's order to show cause was issued on June 2, 1992, before New § 242B went into effect, but he received his notice of hearing after the amendment became law. The Government asserts that the BIA's application of New § 242B was correct. Although Calle-Yanza's order to show cause was issued

---

[30] *See Zhao*, 404 F.3d at 301; *Pierre v. INS*, 932 F.2d 418, 421-22 (5th Cir. 1991).

[31] *See Zhao*, 404 F.3d at 301.

before June 13, 1992, the Government contends that the subsequent notice of hearing made it appropriate to apply New § 242B.

We have addressed the applicability of New § 242B versus Old § 242(b) before, but not in a case with the unique timeline presented here. In *de Morales v. INS*,[32] we stated that "[t]he amended statute applies if notice of the hearing was provided after June 13, 1992."[33] But, unlike here, that case involved an order to show cause and a notice of hearing that were both issued after June 13, 1992.[34] Additionally, in *Rodriguez-Manzano v. Holder*,[35] we explained that the "post-1992 regulations imposing timing requirements on motions to reopen deportation proceedings do not apply retroactively to motions to reopen deportation proceedings commencing before 1992."[36] That case involved an order to show cause and a notice of hearing that were both issued before June 13, 1992.[37]

The BIA has decided at least one case with a similar timeline to the one here. In *In re Grijalva-Barrera*,[38] an order to show cause was issued before June 13, 1992, but the alien's hearing was held on March 1, 1993, after the effective date, though it is unclear when the alien received a notice of hearing.[39] The BIA applied New § 242B, but it gave no explanation as to

---

[32] 116 F.3d 145 (5th Cir. 1997).

[33] *Id.* at 147 n.4.

[34] *Id.* at 146, 147 n.4.

[35] 666 F.3d 948 (5th Cir. 2012).

[36] *Id.* at 952, 954 (citing *In re Cruz-Garcia*, 22 I. & N. Dec. 1155, 1159 (BIA 1999)).

[37] *Id.* at 954.

[38] 21 I. & N. Dec. 472 (BIA 1996).

[39] *Id.* at 472.

why.[40]   In other cases, the BIA has provided some clarity on when New § 242B is applicable.  It has stated without discussion that "[d]eportation proceedings involving notices of hearing issued between June 13, 1992 and March 31, 1997, [are] governed by section 242B of the Act."[41]  But those cases did not involve the unique timeline at issue here, in which the order to show cause was issued before June 13, 1992 and the notice of hearing was issued after.[42]  Moreover, we have previously interpreted the BIA's holding in these cases to mean that "post-1992 regulations . . . do not apply retroactively to motions to reopen . . . *commencing* before 1992."[43]  Applied to the unique timeline here, our reading of the BIA's cases would require the application of Old § 242(b) because Calle-Yanza's proceedings commenced on June 3, 1992.  But the plain language of the BIA's decisions would require the application of New § 242B because Calle-Yanza's notice of hearing was issued on July 18, 1992.

Turning to our sister circuits, one court has addressed the precise statutory construction issue raised by the timeline in this case.[44]  In *Lahmidi v. INS*,[45] the Ninth Circuit engaged in an exhaustive review of the statutory framework and concluded that Old § 242(b) applies when an order to show cause was issued before June 13, 1992, even if a notice of hearing is sent

---

[40] *See id.* at 473-74.

[41] *Cruz-Garcia*, 22 I. & N. Dec. at 1156 n.1; *see also In re Mancera-Monroy*, 22 I. & N. Dec. 79, 80 n.1 (BIA 1998) (stating the same).

[42] *Cruz-Garcia*, 22 I. & N. Dec. at 1156; *Mancera-Monroy*, 22 I. &. N. Dec. at 80-81.

[43] *Rodriguez-Manzano v. Holder*, 666 F.3d 948, 952 (5th Cir. 2012) (emphasis added) (citing *Cruz-Garcia*, 22 I. & N. Dec. at 1159).

[44] *Lahmidi v. INS*, 149 F.3d 1011, 1014-16 (9th Cir. 1998); *see also Avalos-Cieza v. Holder*, 449 F. App'x 898, 901 (11th Cir. 2011) (per curiam) (unpublished) (agreeing with the reasoning in *Lahmidi* in an unpublished opinion).

[45] 149 F.3d 1011.

after.[46]  Looking first at the plain language of the implementing statute, the court reasoned that "Congress intended that all of the specified notice and penalty procedures would be implemented on a single date set by the Attorney General."[47]  It determined that "[t]he fact that Congress made the effective date of [New] § 242B contingent on the implementation of [a central address file system to provide the proper notice under New § 242B] demonstrates that Congress intended the notice procedures to be fully operational at the same time that the new penalties and other [New] § 242B provisions would become effective."[48]  In other words, "Congress contemplated . . . a single integrated procedure to be implemented simultaneously and to be construed so as to operate as a unified whole."[49]

The Ninth Circuit then turned to the structure of New § 242B.  It reasoned that subsection (a) enhanced the notice provisions by requiring a written order to show cause that specifies "the requirement that the alien provide a written record of any address change, and the consequences of failing to provide a record of address change."[50]  Subsection (a) also required the creation of the central address file system to manage the new notice procedures as well as a detailed notice of hearing.[51]  Next, the court observed that "subsections (c) and (e) impose strict sanctions upon an alien for failing to appear at the deportation hearing once he has been provided with proper

---

[46] *Id.* at 1016.

[47] *Id.* at 1014.

[48] *Id.*

[49] *Id.*

[50] *Id.* at 1015 (italics omitted).

[51] *Id.*

notice."[52]  The court therefore determined that "the notice provisions were strengthened so that it could fairly be assumed that aliens who failed to appear did so knowingly, and severe sanctions were then adopted premised on the assumption that their deportation would be both fair and appropriate."[53]  As additional support, it noted that "several of the subsections cross-reference each other and state that their operation is contingent one on the other."[54]  Accordingly, the court "conclude[d] that, by making subsections (a), (c), and (e) interdependent upon each other and effective concurrently, Congress clearly intended that the sanctions contained in the amendment would be applied at such time as the notice provisions had become effective and the INS had complied with their requirements."[55]

Lastly, the Ninth Circuit examined the legislative history.  The court cautioned that the plain language of the statute controlled its decision but maintained that the history provided further support.[56]  It reasoned that "Congress enacted both the notice and penalty provisions of [New] § 242B to address the failure of aliens to appear at their scheduled deportation hearings,"[57] and that "the notice provisions and the penalties would operate together to further this single goal."[58]  As a result, "Congress intended that

---

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.* at 1016.

[56] *Id.*

[57] *Id.* (citing H.R. Rep. No. 101-955, at 132 (1990) (Conf. Rep.), *as reprinted in* 1990 U.S.C.C.A.N. 6784, 6797).

[58] *Id.* (citing H.R. Rep. No. 101-681, at 150-51 (1990) (Conf. Rep.), *as reprinted in* 1990 U.S.C.C.A.N. 6472, 6556-57).

the new notice rules, including the procedures for orders to show cause and notices of hearings, would come into effect at the same time to ensure that any alien subject to the stricter penalties would first receive the enhanced notice."[59]  The Ninth Circuit therefore concluded that an alien's order to show cause and notice of hearing *both* must have been issued after June 13, 1992 for New § 242B to govern an alien's immigration proceedings.[60]

Decisions from our sister circuits are of course not binding on this court, but they are persuasive.[61]  We join the Ninth Circuit in concluding that the plain language of New § 242B indicates that the enhanced penalty provisions should not be imposed without the protection of the new notice requirements.  As the *Lahmidi* court reasoned, the various subsections of New § 242B are "inextricably intertwined."[62]  We too have observed this interdependency.[63]  Here the BIA applied New § 242B to Calle-Yanza's motion to reopen because his notice of hearing was issued after June 13, 1992. But Calle-Yanza's order to show cause was issued prior to June 13, 1992, and therefore his immigration proceedings "commenced" before New § 242B went into effect.[64]  The BIA should have applied Old § 242(b).

---

[59] *Id.*

[60] *Id.* at 1016-17.

[61] *United States v. Penaloza-Carlon*, 842 F.3d 863, 864 & n.1 (5th Cir. 2016) (per curiam).

[62] *Lahmidi*, 149 F.3d at 1015.

[63] *See de Morales v. INS*, 116 F.3d 145, 148 (5th Cir. 1997) ("[T]he statutory scheme as a whole contemplates that aliens subject to deportation proceedings will make reasonable efforts to attempt to avoid the entrance of *in absentia* orders, and awards them for doing so by subjecting them to a less onerous standard.").

[64] *See Rodriguez-Manzano v. Holder*, 666 F.3d 948, 950 (5th Cir. 2012).

The Government attempts to distinguish *Lahmidi* on the basis that the petitioner in that case never received notice of New § 242B's requirements, whereas Calle-Yanza was informed of those requirements in his notice of hearing. That is correct. Nevertheless, this distinction is unpersuasive. Congress "clearly intended" for New § 242B's notice and penalty provisions to go into effect on the same day.[65] Calle-Yanza's proceedings "commenced" on June 3, 1992, before New § 242B's effective date, so we conclude that the BIA abused its discretion when it concluded that Calle-Yanza's motion was untimely.[66] Old § 242(b) governs Calle-Yanza's motion, and it "set[s] no time or numerical limitations on aliens seeking to reopen deportation proceedings conducted in absentia."[67]

*       *       *

We GRANT Calle-Yanza's petition, VACATE the BIA's decision, and REMAND for further proceedings consistent with this opinion.

---

[65] *Lahmidi*, 149 F.3d at 1016.

[66] *See Rodriguez-Manzano*, 666 F.3d at 950.

[67] *See In re Cruz-Garcia*, 22 I. & N. Dec. 1155, 1159 (BIA 1999).